UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X

TURO INC.,                              :
                                        :
                  Movant,               :        **Misc. Case No. _____**
                                        :
                                        :
                                        :
         v.                             :        **Related to Civil Action No. 2:18-cv-**
                                        :        **06055-CAS(GJSx), pending in the**
                                        :        **United States District Court for the**
                                        :        **Central District of California**
AVIS BUDGET GROUP, INC.,                :
                                        X
                  Respondent.

--------------------------------------------------


**TURO INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
COMPEL AVIS BUDGET GROUP, INC. TO COMPLY WITH SUBPOENA**

# TABLE OF CONTENTS

Page

I.   BACKGROUND ....................................................................................1

    A.   The Underlying Action Seeks to Preclude LAX from Imposing its
Rental-Car-Company Scheme on Online Peer-to-Peer Car Sharing
Platform Turo. ............................................................................1

        1.   LAX Sought to Impose its Rental-Car-Company Permit Scheme
on Turo at the Behest of Rental Car Companies. ................................1

        2.   Turo Sued to Stop LAX from Imposing its Rental-Car-Company
Scheme, and the City Counterclaimed Against Turo and its Users. ....2

    B.   The Narrowly Tailored Subpoena to Avis Seeks Documents Relevant to
Turo's Claims and Defenses. ..........................................................6

    C.   Avis Refused to Produce Documents in Response to the Subpoena. ..........8

II.  LEGAL STANDARD.............................................................................9

III. ARGUMENT ......................................................................................10

    A.   The Subpoena Seeks Documents Relevant to the Claims and Defenses. ...10

        1.   Documents Concerning Avis's TNC Programs, and the City's
Treatment of Those Programs, Are Relevant to Turo's Equal-
Protection Claim and Defense. .........................................................10

        2.   Documents Concerning Avis's TNC Programs Are Relevant to
Turo's Defense Against the City's Unfair-Competition Claim. .......12

    B.   Avis's Objections to the Subpoena Are Improper and Unsupported.........13

        1.   Avis Has Not Proven Compliance Would Pose an Undue Burden. .13

        2.   Avis's Confidentiality Objections Are Without Merit.....................15

        3.   Avis's Assertion that Turo Served the Wrong Entity Is Erroneous..15

        4.   The Subpoena Is Not Duplicative of Discovery to the City. ............17

        5.   Avis's Remaining Boilerplate Objections Lack Merit.....................19

IV.  CONCLUSION...................................................................................19

## TABLE OF AUTHORITIES

**Page**

### Cases

*Ameri-Med. Corp. v. Workers' Comp. Appeals Bd.*,
   42 Cal. App. 4th 1260 (1996) .......................................................................15

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
   Nos. 12 MD 2335(LAK)(JLC), et al., 2014 WL 2884726 (S.D.N.Y. June
   26, 2014) .......................................................................................................19

*Brown v. Merlo*,
   8 Cal. 3d 855 (1973) .....................................................................................11

*Cohn-Aizic v. Avis Budget Grp., Inc.*,
   No. 17-cv-05527-RJB, 2017 WL 5121447 (W.D. Wash. Nov. 6, 2017) ...................16

*Dietrich v. Bauer*,
   No. 95 Civ. 7051(RWS), 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000).............15, 16

*Doe v. Saenz*,
   140 Cal. App. 4th 960 (2006) ........................................................................11

*Dotson v. Edmonson*,
   No. 16-15371, 2017 WL 11535244 (E.D. La. Nov. 21, 2017)...................................15

*Fischer v. Forrest*,
   Nos. 14 Civ. 1304 & 14 Civ. 1307 (PAE) (AJP), 2017 WL 773694
   (S.D.N.Y. Feb. 28, 2017) ...............................................................................19

*Frazier v. Morgan Stanley & Co., LLC*,
   No. 16-cv-804 (RJS), 2021 WL 2709250 (S.D.N.Y. July 1, 2021).............................19

*Grimes v. Avis Budget Grp., Inc.*,
   No. 18-1936 (SDW) (LDW), 2018 WL 3377710 (D.N.J. July 10,
   2018) .............................................................................................................16

*Huang v. iTV Media, Inc.*,
   No. 13-CV-3439 (JFB) (SIL), 2017 WL 706194 (E.D.N.Y. Feb. 22,
   2017) .............................................................................................................16

*Jacoby v. Hartford Life & Accident Ins. Co.*,
   254 F.R.D. 477 (S.D.N.Y 2009) ....................................................................19

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   298 F.R.D. 184 (S.D.N.Y. 2014) .....................................................................9

**TABLE OF AUTHORITIES**
(continued)

                                                                                         **Page**

*Mendez v. Avis Budget Grp., Inc.*,
   No. 11-6537(JLL), 2012 WL 1224708 (D.N.J. Apr. 10, 2012).................................16

*NAACP v. E. Ramapo Cent. Sch. Dist.*,
   No. 17 Civ. 8943 (CS) (JCM), 2018 WL 11260468 (S.D.N.Y. Apr. 27,
   2018) ..................................................................................................................14

*In re Namenda Direct Purchaser Antitrust Litig.*,
   No. 15 Civ. 7488 (CM) (JCF), 2017 WL 3822883 (S.D.N.Y. Aug. 30,
   2017) ..................................................................................................................14

*In re Namenda Direct Purchaser Antitrust Litig.*,
   No. 15 Civ. 7488 (CM) (JCF), 2017 WL 4700367 (S.D.N.Y. Oct. 19,
   2017) ................................................................................................10, 13, 14, 15

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
   MDL No. 13-2419-FDS, 2013 WL 6058483 (D. Mass. Nov. 13, 2013)....................15

*S.E.C. v. Sassano*,
   274 F.R.D. 495 (S.D.N.Y. 2011) ..................................................................................9

*SCC Acquisitions, Inc. v. Super. Ct.*,
   243 Cal. App. 4th 741 (2015) ...................................................................................15

*Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*,
   Nos. 16-cv-00158, et al., 2018 WL 2981827 (E.D. Cal. June 14, 2018)....................18

*Village of Willowbrook v. Olech*,
   528 U.S. 562 (2000)...................................................................................................11

**Statutes**

Communications Decency Act, 47 U.S.C. § 230................................................................3

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ..................................3

**Other Authorities**

Fed. R. Civ. Proc.
   26.........................................................................................................................9, 12
   45.................................................................................................................... *passim*

Turo Inc. ("Turo") is a party to an action pending in California federal court, captioned *Turo Inc. v. City of Los Angeles*, No. 2:18-cv-06055 (CAS) (GJSx) (C.D. Cal.). On July 6, 2021, Turo served a subpoena for the production of documents pursuant to Federal Rule of Civil Procedure 45 ("Rule 45") seeking documents from non-party Avis Budget Group, Inc. ("Avis") relevant to Turo's claims and defenses ("Subpoena"). But Avis has flatly refused to comply with the Subpoena. Indeed, Avis has failed to produce a ***single document*** in response to Turo's five narrowly tailored requests, even after Turo's good-faith efforts to meet and confer. Through this motion, Turo seeks to compel Avis to produce documents responsive to the Subpoena, which are directly relevant to the underlying litigation and the production of which would impose no undue burden on Avis.

## I.    BACKGROUND

### A.    The Underlying Action Seeks to Preclude LAX from Imposing its Rental-Car-Company Scheme on Online Peer-to-Peer Car Sharing Platform Turo.

#### 1.    LAX Sought to Impose its Rental-Car-Company Permit Scheme on Turo at the Behest of Rental Car Companies.

Turo is an online platform that operates a peer-to-peer car sharing marketplace connecting car owners ("hosts") with users seeking cars on a short-term basis ("guests"). (*See* Declaration of Ryan O'Hollaren ("O'Hollaren Decl.") Ex. 1 ¶¶ 1, 34-40.) Unlike Avis and other rental car companies, Turo does not itself own a fleet of cars or rent cars to its users; nor does it maintain extensive infrastructure like sales counters, maintenance facilities, and storage lots. (*Id.*) Instead, hosts list their cars on Turo's platform, and guests use the platform to search hosts' listings, book cars, and coordinate with each other to choose a mutually convenient location to meet to pick up the car at the beginning and end of the user's trip. (*Id.*) Owners—from students to retirees—benefit from using Turo to turn idle cars into a source of income. (*Id.* ¶¶ 2, 32-33.) In turn, guests benefit from access

to a wide selection of cars and a superior user experience. (*Id.* ¶ 2.)

Although Turo's website does not require hosts to offer delivery to any specific location, some Turo users have chosen to meet at Los Angeles International Airport ("LAX") to hand off cars. (*Id.* ¶¶ 1, 5, 37-40.) These handoffs have upset traditional rental car companies (like Avis), who—viewing Turo as an existential threat to their business model—launched an aggressive campaign to pressure airports and governments to stifle Turo's innovative model. (*Id.* ¶¶ 15-21.) Under pressure from these companies, the City threatened litigation in an effort to force Turo to enter into a permitting scheme designed for rental car companies. (*Id.* ¶ 21.)

In November 2016, the City of Los Angeles ("City")—which owns and operates LAX through its Department of Airports, Los Angeles World Airports ("LAWA")—sent a cease-and-desist letter to Turo, alleging that Turo was operating as an unauthorized rental car company and was required to obtain permits and pay fees to the airport. (*Id.* ¶ 91; O'Hollaren Decl. Ex. 2 ¶ 193.) Turo responded that it is not a rental car company and does not own or rent a fleet of cars, and therefore is not subject to a rental-car-company permit. (O'Hollaren Decl. Ex. 2 ¶ 194.)

### 2. Turo Sued to Stop LAX from Imposing its Rental-Car-Company Scheme, and the City Counterclaimed Against Turo and its Users.

In July 2018, once it was clear that LAWA and the City had no intention of working with Turo to design a permit consistent with Turo's status as a peer-to-peer car sharing marketplace—not a rental car company—Turo sued the City seeking declaratory relief that Turo is not a rental car company and that LAX's insistence that Turo obtain a rental-car-company permit violates Turo's and its users' rights. (*See generally* O'Hollaren Decl. Ex. 1.) The City moved to dismiss Turo's claims, which the district court denied as to nearly

all of Turo's claims.[1]  (O'Hollaren Decl. ¶ 5.)

In December 2019, nearly 18 months into the litigation, the City moved to amend its responsive pleading to add five counterclaims against Turo and three new defendants who list cars on Turo's platform (the "Host Defendants").  (*Id.* ¶ 7.)  The City's counterclaims allege that—by users handing off cars at or near LAX without Turo having a rental-car-company permit—Turo and its users, *inter alia*, violate the LAX Rules and Regulations, and violate California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*  (O'Hollaren Decl. Ex. 2 ¶¶ 239-44.)  Underpinning the claims is the City's central assertion that Turo and its users "harm" and have an "unfair competitive advantage over" rental car companies at LAX.  (*Id.* ¶¶ 126, 213, 232, 242.)

In response, Turo denied the City's allegations and asserted twelve affirmative defenses.  (O'Hollaren Decl. Ex. 3.)  Turo contends that, *inter alia*, the City does not have the authority to regulate Turo as if it were a rental car company and that, as an online marketplace platform, Turo has no control over where its users hand off cars.  (*E.g.*, *id.* ¶¶ 202, 209 & pp. 19, 22-23; *see* O'Hollaren Decl. Ex. 1 ¶¶ 9, 40, 92-110.)  Turo also contends that its business model is pro-consumer competitive, and is not "unfair" to rental car companies.  (*E.g.*, O'Hollaren Decl. Ex. 3 ¶ 242; O'Hollaren Decl. Ex. 1 ¶¶ 14, 17.)

Both parties moved on the City's counterclaims.  (O'Hollaren Decl. ¶ 8.)  The district court denied Turo's motion to dismiss, and granted the City's request for a preliminary injunction.  (*Id.*)  On appeal, the Ninth Circuit Court of Appeal vacated the injunction, and remanded the case to the Central District of California, where discovery has been ongoing.  (*Id.* ¶¶ 10-11.)  Discovery closes on January 19, 2022.  (*Id.* ¶ 11.)

---

[1] The district court ruled that Turo's claim for immunity under the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), was not ripe for adjudication.  (O'Hollaren Decl. ¶ 5.)  Turo has since asserted a Section 230 affirmative defense.  (*Id.* Ex. 3 at p. 19.)  Turo, however, focuses its discussion on the claims and defenses pertinent to the Subpoena.

As relevant to this Motion, Turo asserts the following, both as affirmative claims for declaratory relief against the City and as defenses:

***Improper Classification as a Rental Car Company.***   The City claims that Turo should be subject to its permitting scheme for rental car companies.  (*See* O'Hollaren Decl. Ex. 2 ¶¶ 205-14 & Request for Relief ¶¶ 2-3.)  Turo, however, alleges that the City lacks any statutory or regulatory basis for subjecting Turo to that scheme.  (*See* O'Hollaren Decl. Ex. 1 ¶¶ 104-10 & Prayer ¶¶ 4-6.)  Instead, it appears that the City has taken direction from national rental car companies and, as a result, misclassifies Turo as a rental car company subject to a set of rules that have nothing to do with Turo's business model.  (*Id.* ¶¶ 15-21.)

***Turo Does Not Violate the Unfair Competition Law.***   The City claims that Turo's assertion that it is not subject to a rental-car-company permit is unfair to rental car companies, like Avis, that enter into those permits.  (O'Hollaren Decl. Ex. 2 ¶¶ 239-44.)  Turo denies these allegations (O'Hollaren Decl. Ex. 3 ¶¶ 241-44); and Turo also seeks affirmative declaratory relief that it does not violate the Unfair Competition Law because, *inter alia*, Turo is not a rental car company and there is no logical or legal basis for subjecting Turo to the same regulations as those companies (O'Hollaren Decl. Ex. 1 ¶ 10 & Prayer ¶ 2).  To the contrary, as an online peer-to-peer marketplace platform, Turo does not benefit from the airport facilities and services that rental car companies do.  Allowing Turo to seek permitting for its own, unique business model is not unfair to rental car companies, who, for years, have benefitted from LAX's facilities and services to rent cars to customers, develop rental car facilities, and the like.  (*See id.* ¶¶ 5-10, 41-88.)

***Violation of the Equal Protection Clause.***   Turo alleges that the City violates its and its users' rights to equal protection under the California and U.S. Constitutions by treating Turo differently than similarly situated ground transportation operators, including

taxis, limousines, and Transportation Network Companies ("TNCs")—like Uber Technologies, Inc. ("Uber") and Lyft, Inc. ("Lyft")—without rational basis. (O'Hollaren Decl. Ex. 1 ¶¶ 84-88; O'Hollaren Decl. Ex. 3 at 24.) Indeed, rather than requiring these operators (and their users) to comply with the terms of rental-car-company permits, the City seeks to impose location and fee regulations that are vastly more favorable to these operators and their users. For example:

- Rental-Car-Company Permits: The City contends that, under its rental-car-company permits, Turo users **could not** conduct car handoffs at LAX, but nevertheless must pay exorbitant fees (designed for rental car companies with facilities on or near the airport). (O'Hollaren Decl. Ex. 2 ¶ 151.) LAX's off-airport rental car company permit would impose a double-shuttle system, in which: (1) users must take an LAX shuttle to an off-airport "Remote Rental Car Depot," where (2) off-airport rental car companies are **solely** authorized to pick up users using a courtesy shuttle vehicle. (*Id.*) According to the City, companies operating under this permit may **not** avoid this double-shuttle requirement by "'arrang[ing]' for" pickups or drop-offs at LAX, including by "contracting . . . with an entity that has a license agreement to operate a . . . service at Airport," such as a TNC.[2] (O'Hollaren Decl. ¶ 18.)

- TNC Permits: The City, however, allows substantially similar operators' users to be picked up and dropped off at LAX, in exchange for significantly lower fees. (O'Hollaren Decl. Ex. 1 ¶¶ 84-86.) For example, Uber and Lyft may pick up and drop off users curbside or at a staging area near the Central Terminal Area ("CTA")

---

[2] LAX's on-airport rental car concession agreement likewise requires rental car companies to pick up and drop off customers using a shuttle, and also does not allow for TNC pickups and drop-offs at LAX. (O'Hollaren Decl. Ex. 2 ¶ 149.)

("***On-Airport TNC Staging Lot***"), for only a fraction of the fees that the City would charge a rental car company for such on-airport pickups and drop-offs. (*Id.* ¶ 85.) In other words, the City would impose worse location restrictions ***and*** worse fees on Turo and its users (under a rental-car-company permit) than it imposes on substantially similar entities. The City offers no rational basis for this differential treatment, acting instead with the improper motive of prioritizing the interests of multinational rental car companies, in violation of Turo's and its users' rights to equal protection. (*Id.* ¶ 87.)

### B. The Narrowly Tailored Subpoena to Avis Seeks Documents Relevant to Turo's Claims and Defenses.

In April 2021, nearly three years into litigation, Turo became aware of two new partnerships between (i) rental car companies, including Avis, and (ii) TNCs, including Uber and Lyft (collectively, "TNC Programs"). These programs—"Uber Rent" and "Lyft Rentals"—appear designed to compete with Turo's business model, and appear to receive more favorable treatment from the City for car pickup and drop-off activity that is squarely at issue in the underlying action.

Specifically, Avis's TNC Programs appear, like Turo, to provide web- and app-based services for the provision of short-term car usage, with the option of terminal-curbside or terminal-adjacent personal-car pickups and drop-offs at LAX. (*See* O'Hollaren Decl. ¶¶ 19-23.) The limited publicly available information reflects that, under these TNC Programs: LAX customers can rent cars with rental car companies (including Avis) on the TNCs' (Uber's or Lyft's) websites or mobile applications; and rental car companies may then facilitate TNC pickups and drop-offs curbside or at the On-Airport TNC Staging Lot for transportation to the rental car companies' vehicle lots. (*See id.*) The TNC Programs appear to do so by providing $10 credits for TNC rides from LAX to the rental car companies' vehicle lots. (*See id.* ¶¶ 20-21.)

Thus, it seems that, under the TNC Programs, rental car companies like Avis pick up and drop off customers in a manner the City claims Turo cannot do.  As set forth above, the City has alleged in litigation that Turo users may not—with or without a rental-car-company permit—pick up or drop off users curbside or at the On-Airport TNC Staging Lot, including by facilitating TNC rides.  But it now appears that the City allows rental car companies to do just that.  As set forth below, this differential treatment makes the TNC Programs squarely relevant to Turo's equal-protection and unfair-competition claims and defenses, such that Turo is entitled to discovery on the programs.  *Infra* § III.A.

As such, on July 6, 2021, Turo served the Subpoena on Avis, seeking basic information about (i) Avis's TNC Programs at LAX and (ii) the City's treatment of those programs.  (O'Hollaren Decl. Ex. 9.)  The Subpoena contains five narrow requests for:

- "Documents and communications concerning [Avis's] **curbside operations** at LAX," including the TNC Programs (Request No. 1);

- Avis's "**agreements**" with Uber and Lyft concerning the TNC Programs (Request Nos. 2-3); and

- Avis's **communications with LAWA** concerning the TNC Programs and peer-to-peer car sharing programs (Request Nos. 4-5)

(the "Requests").[3]  (*Id.*)  Avis is defined in the Requests to include, *inter alia*, its "subsidiaries" and other constituent entities.  (*Id.* at 2.)

---

[3] Specifically, Turo's requests seek:
- Request No. 1: "All DOCUMENTS and COMMUNICATIONS CONCERNING YOUR CURBSIDE OPERATIONS at LAX, including but not limited to any partnerships with UBER or LYFT."
- Request No. 2: "All AGREEMENTS between YOU and UBER CONCERNING car rentals offered at or near LAX."
- Request No. 3: "All AGREEMENTS between YOU and LYFT CONCERNING car rentals offered at or near LAX."
- Request No. 4: "All COMMUNICATIONS between YOU and LAWA CONCERNING YOUR AGREEMENTS with TNCs to offer car rentals at or near LAX."
- Request No. 5: "All COMMUNICATIONS between YOU and LAWA CONCERNING PEER-TO-PEER CAR SHARING PROGRAMS, including but not limited to TURO.

**C.**     **Avis Refused to Produce Documents in Response to the Subpoena.**

On July 16, 2021, Turo granted Avis's request for an extension to respond to the Subpoena.  (O'Hollaren Decl. ¶ 26.)  Notwithstanding this extension, on July 23, 2021, Avis declined to substantively respond to the Subpoena or produce any responsive documents.  (*See* O'Hollaren Decl. Ex. 12.)  Instead, Avis served written objections that contained boilerplate objections and objected that the Requests seek information that is allegedly (i) irrelevant to the litigation; (ii) unduly burdensome; (iii) confidential, proprietary, or trade secret; and (iv) available to a party to the litigation.  (O'Hollaren Decl. Ex. 11.)  Avis also objected that "ABG [Avis Budget Group] is a holding company and itself does not rent vehicles at or near LAX." (*Id*. at p. 5.)

On July 30, 2021, the parties met and conferred.  (O'Hollaren Decl. ¶ 28.)  Turo explained the nature of the case and why each Request is narrowly tailored to the claims and defenses in the action.  (*Id.*)  Turo also clarified that: the requested documents are not available from the parties to the litigation; the case has a robust protective order for sensitive business information; the minimal burden of responding to the Requests is outweighed by the importance of the documents to the case; and a New Jersey state court previously ordered ABG to produce documents of a similar nature in a parallel case between Turo and the City and County of San Francisco ("San Francisco").  (*Id.*)  Avis maintained its objections.  (*Id.*)

After the call, Turo sent Avis a copy of the relevant pleadings, as well as a copy of the New Jersey state court order compelling ABG to produce similar documents.  (*Id.* ¶ 29.)  On August 2, 2021, Avis notified Turo that it would refuse to comply with the Subpoena, pursuant to its written objections.  (*Id.* ¶ 30.)  Avis further argued that "neither ABG nor its affiliated entities have peer-to-peer rentals at LAX, so there is no evidence

relevant to potential similar conduct to Turo at LAX." (*Id*.)

On October 7, 2021, the parties telephonically conferred again. (*Id.* ¶ 31.) Turo explained that it did not contend that Avis's TNC Programs are a "peer-to-peer" car sharing arrangement exactly like Turo's, but the programs are nonetheless directly relevant to Turo's equal-protection and unfair-competition claims and defenses. (*Id.*) Turo also explained again why Avis's further objections lack merit. (*Id.*) On October 18, 2021, Avis confirmed it would continue to refuse to comply with the Subpoena. (*Id.* ¶ 32.)

## II.   LEGAL STANDARD

Under Rule 45, a subpoena may command the production of documents "in [the party's] possession, custody, or control," which "requires the responding [party] to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(iii), (a)(1)(D). If the responding party timely objects to the subpoena, the serving party may seek an order compelling production. *Id.* 45(d)(2)(B)(i).

The party seeking discovery carries the burden of showing that the requested documents are discoverable within the meaning of Rule 26(b)(1). *S.E.C. v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011). Once the requesting party makes a *prima facie* showing of relevance under Rule 26, the objecting party must show "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (citations omitted).

Rule 26 broadly permits parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Although parties must take "reasonable steps to avoid

imposing undue burden or expense" on non-parties, *id.* 45(d)(1), discovery that is not easily obtained from a party and that is reasonably tailored to avoid imposing a burden on a non-party may be compelled. *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 WL 4700367, at *2 (S.D.N.Y. Oct. 19, 2017) (compelling production of documents despite burden objections).

## III.   ARGUMENT

The Subpoena seeks documents that are within the scope of Rule 45 because the documents sought are directly relevant to Turo's allegations in its Complaint and its defenses to the City's Counterclaims, and Avis's objections lack merit. Thus, the Court should compel Avis to produce all relevant documents from 2018 to present.

### A.   The Subpoena Seeks Documents Relevant to the Claims and Defenses.

Avis objects to each of the Requests on the ground that it seeks information "irrelevant" to the litigation because "[t]he Complaint . . . specifically alleges that certain car rental companies (but not ABG) allegedly engaged in conduct harming Turo." (O'Hollaren Decl. Ex. 11.) Avis misstates the relevance of the Requests. As Turo advised, the Requests seek information relevant to Turo's equal-protection and unfair-competition claims and defenses, namely that: (1) the City treats Turo differently than similarly situated entities; and (2) Turo users' alleged handoffs at or near the airport are not unfair to rental car companies. Documents responsive to the Requests will be probative of these issues.

#### 1.   Documents Concerning Avis's TNC Programs, and the City's Treatment of Those Programs, Are Relevant to Turo's Equal-Protection Claim and Defense.

Documents regarding Avis's TNC Programs, and the City's treatment of those Programs, are relevant to Turo's equal-protection claim and defense. As set forth above, Turo alleges that the City violates Turo's and its users' constitutional rights to equal protection by intentionally treating Turo and its users differently than other similarly

situated entities.  *See infra* at I.A.2.  To prove its equal-protection claim, Turo must show that: (1) it is similarly situated to other entities; (2) the City treated Turo differently than those similarly situated entities; and (3) the City lacked a rational basis for doing so. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Doe v. Saenz*, 140 Cal. App. 4th 960, 989 (2006).  Turo's Requests are squarely germane to these elements.

> ***Element 1: Whether Turo is similarly situated to other entities.***  Documents responsive to Turo's Requests will establish whether Avis's TNC Programs are similarly situated ventures to Turo "with respect to the legitimate purpose of the law . . . ." *Brown v. Merlo*, 8 Cal. 3d 855, 876 (1973) (superseded by statute on other grounds) (citations omitted).  Without a clear understanding of how Avis's TNC Programs work, a fact finder will be unable to decide whether they are comparable to Turo in an equal-protection analysis.  Based on the limited public information, Turo has reason to believe they are: both Turo and the TNC Programs appear to provide web- and app-based services for the provision of short-term car usage, with the option of terminal-curbside or terminal-adjacent personal-car pickups and drop-offs at LAX.  (O'Hollaren Decl. ¶¶ 19-23.)  The narrow set of documents sought in the Subpoena—i.e., (i) documents relating to Avis's curbside operations at LAX," (ii) Avis's "agreements" for the TNC Programs, and (iii) communications with the City concerning the TNC Programs—will shed light on the basic contours of the programs to enable this determination.

> ***Element 2: Whether the City treats Turo differently from similarly situated entities.***  The City's apparent differential treatment between Avis's TNC Programs and Turo on issues related to pickups and drop-offs curbside and at the On-Airport TNC Staging Lot—either directly or by facilitating TNC rides at those locations—is highly relevant to Turo's claim of disparate treatment.  Indeed, if the City has been more solicitous

of Avis for the exact activities that it has stated Turo is forbidden from undertaking, that would sharply buttress Turo's claim of disparate treatment.

     ***Element 3: Whether the City lacked a rational basis for that disparate treatment.*** The documents sought by the Subpoena also are probative of whether the City's differential treatment of Turo has a rational basis. Documents describing the nature of Avis's TNC Programs are critical to evaluating whether the City had a rational basis for treating Turo differently. And the requested communications seek to discern the City's motivation for disparate treatment, including whether that treatment arose at the behest of a competitor (i.e., Avis).

     In short, the requested documents are directly relevant to Turo's equal-protection claim and defense, and thus subject to discovery under Rules 26 and 45.

     **2.**       <u>**Documents Concerning Avis's TNC Programs Are Relevant to Turo's Defense Against the City's Unfair-Competition Claim.**</u>

     Turo seeks to rebut the City's claim that it violates California's Unfair Competition Law because its users allegedly hand off vehicles at or near LAX, giving it a supposed "unfair competitive advantage over [] car rental compan[ies]" like Avis (whose rental-car-company permits would not allow such handoffs, outside of their vehicle lots). (O'Hollaren Decl. Ex. 2 ¶ 242.) The Subpoena seeks documents directly relevant to Turo's defense against this claim.

     Indeed, the Subpoena seeks documents from a supposed victim of Turo's "unfair conduct" about a program that appears to facilitate the same activity that the City has claimed is "unfair" as to Turo—i.e., terminal-curbside or terminal-adjacent personal-car pickups and drop-offs at LAX. If Avis, a supposed victim of Turo's conduct, is engaging in the same activities that the City claims are unfair—and if the City has blessed that

activity, without requiring any special permit[4]—that would substantiate Turo's defense to the claim. **First,** Avis cannot be a "victim" of an unfair activity in which it is also partaking. **Second,** if Avis and TNCs are cooperating to compete with Turo's business model, then Turo's presence in the market cannot be fairly characterized as "anti-competitive" under the Unfair Competition Law. To the contrary, such evidence would show that Turo's presence has been pro-competitive to the extent it spurred innovation in a fossilized marketplace. **Third,** the documents will shed light on whether, and to what extent, Avis believes it has been harmed by Turo. **Fourth,** if the City has allowed Avis customers to be picked up and dropped off at LAX, without requiring Avis to enter the same permitting requirements it seeks to impose on Turo, the City cannot claim that Turo's users' alleged handoffs violate the Unfair Competition Law.

### B.    Avis's Objections to the Subpoena Are Improper and Unsupported.

Avis cannot meet its burden to overcome Turo's showing of relevance. Indeed, Avis has not specifically demonstrated any undue burden; and its remaining objections lack any merit. Avis must produce the responsive documents in its possession, custody, or control. *See, e.g.*, *Namenda*, 2017 WL 4700367, at *2 (compelling production of documents where objecting party did not meet its burden to overcome the requests' relevance).

### 1.    <u>Avis Has Not Proven Compliance Would Pose an Undue Burden.</u>

Avis generally objects to the Requests as "vague and ambiguous, overbroad, harassing and unduly burdensome." (O'Hollaren Decl. Ex. 11 at ¶ 1 & Response Nos. 1-5.) But Avis provides **no** shred of support for its conclusory objections; nor did it articulate

---

[4] Facilitating TNC pickups or drop-offs at LAX would violate either an off-airport or on-airport rental-car-company permit. (*See* O'Hollaren Decl. ¶ 18 & Ex. 2 ¶¶ 147-51.)

any particular burden during the parties' meet-and-confers.  (*Id.*; O'Hollaren Decl. ¶¶ 28-32.)  This alone renders Avis's objections invalid.

As the target of the Subpoena, Avis is responsible for establishing, "with evidence and argument, that the discovery sought is unduly burdensome."  *Namenda*, 2017 WL 4700367, at *2; *see In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 WL 3822883, at *9 (S.D.N.Y. Aug. 30, 2017) ("claims of burden must explain the manner and extent of the burden, as well as the consequences of compliance").  Absent *any* showing of actual burden, Avis may not refuse discovery.  *See NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 17 Civ. 8943 (CS) (JCM), 2018 WL 11260468, at *3 (S.D.N.Y. Apr. 27, 2018) (compelling production of documents where non-party did not set forth the "manner and extent of the burden and probable negative consequences" of compliance) (citations omitted).

Indeed, Avis *cannot* show that responding to the Subpoena will cause undue burden.  The Subpoena is narrowly targeted to seek *only* documents sufficient to show the basic nature of the TNC Programs and the City's treatment of those Programs.  Complying with these Requests will be straightforward: Avis need only (i) identify the agreements covering its TNC Programs; and (ii) undertake a targeted search for documents concerning its curbside operations at LAX and communications with LAWA concerning the TNC Programs and peer-to-peer car sharing programs (e.g., identify proper custodians, run limited search terms, filter by domain name for the communications with LAWA, etc.).  Avis is a large and well-resourced company represented by experienced counsel, and certainly capable of performing these discrete searches efficiently.  On the flipside, the documents sought are highly relevant to the key issues in the litigation.  Avis's unsupported objections of burden are not enough to excuse compliance under these circumstances.

## 2.      Avis's Confidentiality Objections Are Without Merit.

Avis objects, without specificity, that the Requests seek "trade secrets and/or other highly confidential commercial and financial information." (O'Hollaren Decl. Ex. 11 at ¶ 7 & Response Nos. 1-5.)  These objections are hollow.  Turo advised Avis that it may produce documents pursuant to the terms of the protective order entered in the underlying litigation.  (O'Hollaren Decl. ¶¶ 28, 31.)  The protective order, of course, will safeguard any production of trade secret and/or confidential commercial information.  (O'Hollaren Decl. Ex. 4 at 1-2.)  Avis may not withhold documents on this basis.  *See Namenda*, 2017 WL 4700367, at *3 (rejecting non-party's claim to heightened privacy in light of protective order); *see also Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (granting motion to compel and finding non-party's confidentiality objections allayed by court's entry of a protective order); *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *11 (D. Mass. Nov. 13, 2013) (overruling objection that subpoenaed information was confidential and/or proprietary business information in light of protective order).[5]

## 3.      Avis's Assertion that Turo Served the Wrong Entity Is Erroneous.

Avis further objects that "ABG" "is a holding company and itself does not rent vehicles at or near LAX." (O'Hollaren Decl. Ex. 11 at Response Nos. 1-5.)  Even if so, Avis must comply with the Subpoena.  Avis has not objected (let alone shown) that the documents are outside its possession, custody, or control—the relevant standard for production of documents.  Fed. R. Civ. Proc. 45(a)(1)(iii); *see Dietrich v. Bauer*, No. 95 Civ. 7051(RWS), 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000), *on reconsideration in part*, 198 F.R.D. 397 (S.D.N.Y. 2001) ("'[c]ontrol' has been construed broadly . . .

---

[5] Avis's objections that the Requests purportedly "impact privacy rights guaranteed by the California and United States Constitutions" also lack merit.  (O'Hollaren Decl. Ex. 11 at ¶ 7 & Response Nos. 1-5.)  Under California law, corporations do not have a constitutional right to privacy.  *SCC Acquisitions, Inc. v. Super. Ct.*, 243 Cal. App. 4th 741, 755 (2015). Instead, corporations only have limited privacy rights that, in most cases, are not sufficient to justify suppressing discovery.  *Ameri-Med. Corp. v. Workers' Comp. Appeals Bd.*, 42 Cal. App. 4th 1260, 1286-88 (1996).

where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation" under Rule 45) (citations omitted). Indeed, it is well settled that entities, including holding companies, must produce documents in their control. *See, e.g.*, *Huang v. iTV Media, Inc*., No. 13-CV-3439 (JFB) (SIL), 2017 WL 706194, at \*5 (E.D.N.Y. Feb. 22, 2017) (ordering holding company to produce documents held by subsidiary); *Dietrich*, 2000 WL 1171132, at \*3-5 (ordering holding company to produce documents in possession of subsidiary, and stating that "[n]umerous courts have concluded that a parent corporation . . . must be deemed to have control over documents located with that subsidiary").

Nor can Avis contend the information is outside of its control. While the public information on the TNC Programs does not reveal the specific "Avis" entity that contracted with TNCs, ABG regularly litigates issues related to rental-car activity across the nation, and thus cannot credibly argue it is an improper entity for discovery related to its rental-car business.[6] Indeed, in 2019, a New Jersey state court **compelled ABG to produce documents of the exact same nature** in connection with a parallel case between Turo and San Francisco—**and ABG was able to comply**. (O'Hollaren Decl. ¶ 25 & Ex. 10 (compelling ABG to produce documents and communications with San Francisco relating to airport permitting; peer-to-peer companies, including Turo; and Avis's pickup/drop-off services at the airport).)[7] Here, Turo requested all documents within Avis's "possession, custody, or control," where Avis was specifically defined to include its "subsidiaries." (O'Hollaren Decl. Ex. 9 at 2-4.) There is no basis for Avis to ignore the Subpoena.

---

[6] *E.g.*, *Mendez v. Avis Budget Grp., Inc.*, No. 11-6537(JLL), 2012 WL 1224708 (D.N.J. Apr. 10, 2012) (denying ABG's motion to dismiss a putative class action related to Avis's rental-car activity); *Cohn-Aizic v. Avis Budget Grp., Inc.*, No. 17-cv-05527-RJB, 2017 WL 5121447 (W.D. Wash. Nov. 6, 2017) (entry of judgment against ABG for Avis's conduct related to a car rental); *Grimes v. Avis Budget Grp., Inc.*, No. 18-1936 (SDW) (LDW), 2018 WL 3377710 (D.N.J. July 10, 2018), *aff'd sub nom. Grimes v. Avis Budget Grp.*, 762 F. App'x 130 (3d Cir. 2019) (granting ABG's motion to dismiss relating to items left in an Avis rental car).

[7] Moreover, ABG's 10-K filing with the U.S. S.E.C. expressly references "[o]ur current and growing list of partnerships with mobility service and technology providers, ***including companies such as Uber***," reflecting that ABG is a contracting entity with Uber. (O'Hollaren Decl. ¶ 25 (emphasis added).)

### 4.    The Subpoena Is Not Duplicative of Discovery to the City.

Avis further objects to producing documents it speculates may be held by the City. (O'Hollaren Decl. Ex. 11 at ¶ 3 & Response Nos. 1-5.)  Only Requests 4 and 5—i.e., for Avis's communications with LAWA concerning its TNC Programs and peer-to-peer car sharing programs like Turo—plausibly implicate documents also in the possession of the City.[8]  (*See id.*)  Avis's objection, however, is unavailing as to all Requests.

Turo requested the City produce communications with rental car companies, including Avis; but Avis likely has responsive documents that the City does not possess and that have not been produced in the litigation (i.e., the reason Turo requested the documents from Avis).  Indeed, in 2019 and 2020—years before Turo learned about Avis's TNC Programs (in April 2021)—Turo served document requests on the City seeking its communications with rental car companies, including relating to agreements with ground transportation operators and peer-to-peer car sharing programs.  (O'Hollaren Decl. ¶ 12.) The City agreed to produce responsive documents, and has since represented that its production is complete.  (*Id.* ¶¶ 13-14.)  But there are likely ***significant gaps*** in the City's production of communications with Avis (particularly relating to the TNC Programs and peer-to-peer car sharing programs), such that Avis's production here is warranted.

***First***, Turo's document requests to the City were issued long before Avis announced its TNC Programs.  Although Turo vigorously has sought supplemental productions from the City, the City's productions to-date do not contain ***any*** communications with Avis relating to its TNC Programs (ever) or relating to peer-to-peer car sharing programs post-June 2018; or any post-April 2020 communications with rental

---

[8] The Requests for documents concerning Avis's curbside operations at LAX (Request No. 1) and Avis's agreements with Uber and Lyft (Request Nos. 2-3) are not restricted to those shared with the City, but include ***all*** Avis documents (e.g., internal Avis documents and those exchanged with other entities).  (O'Hollaren Decl. Ex. 9.)

car companies generally.  (*Id.* ¶ 13.)  The City has now rebuffed Turo's repeated requests that it re-run search terms to capture the communications sought by the Subpoena.

*Second*, the City also has declined to produce a vast trove of documents under an alleged deliberative process privilege that applies only to governmental entities—not corporations like Avis.  (*Id.* ¶ 16.)  As such, Avis may hold documents that the City has withheld under its sweeping view of its governmental privileges.

*Third*, even if the City were to supplement its production (which it has not agreed to do), Turo's early requests to the City require the City to exercise discretion in selecting responsive documents—such that two parties are likely to produce different sets of documents.  This is particularly so where, as here, the City chose custodians, search terms, and document-review instructions long before the TNC Programs came to light.

*Fourth*, Turo has reason to believe that Avis may have preserved different documents than the City.   Aside from inherent preservation differences,[9] the TNC Programs were not enacted when the City's litigation hold was implemented, and thus the City's custodians and document sources did not intend to cover the later-enacted programs.

Under these circumstances, the Subpoena is a permissible, alternative means to acquire relevant documents that have not been produced by a party to this litigation.  *See, e.g.*, *Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*, Nos. 16-cv-00158, et al., 2018 WL 2981827, at *4 (E.D. Cal. June 14, 2018) (compelling non-party to produce documents where party's "productions had gaps" that might be filled by non-party).  Indeed, it is well settled that the mere fact that Avis and the City may have some of the same responsive documents in their possession does not excuse Avis from complying with the Subpoena.

---

[9] Discovery to date has indeed revealed deficiencies in the City's preservation.  For example, a non-party TNC produced to the Host Defendants a communication with the City found nowhere in the City's production—notwithstanding document requests requesting such communications.  (O'Hollaren Decl. ¶ 15.)

*See Frazier v. Morgan Stanley & Co., LLC*, No. 16-cv-804 (RJS), 2021 WL 2709250, at *5 (S.D.N.Y. July 1, 2021) (where a non-party subpoena requests "discovery that may overlap significantly with discovery from" the opposing party in the underlying litigation, "the potential for duplicative discovery does not by itself make [the] subpoena improper"); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, Nos. 12 MD 2335(LAK)(JLC), et al., 2014 WL 2884726, at *4 (S.D.N.Y. June 26, 2014) (ordering non-party to produce documents, and stating that "third-party subpoenas are not categorically ruled out where necessary") (citation omitted).

### 5.   Avis's Remaining Boilerplate Objections Lack Merit.

Avis's remaining boilerplate objections are insufficient to avoid discovery.  (*See* O'Hollaren Decl. Ex. 11 at ¶¶ 1-15.)  As courts repeatedly have warned, such boilerplate objections do not suffice and additionally waive any other objections a party may have. *See, e.g.*, *Fischer v. Forrest*, Nos. 14 Civ. 1304 & 14 Civ. 1307 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("any discovery response that does not . . . state objections with specificity . . . will be deemed a waiver of all objections (except as to privilege)"); *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y 2009) ("boilerplate objections . . . are a paradigm of discovery abuse").[10]

## IV.   CONCLUSION

Turo respectfully requests that the Court grant Turo's Motion and compel Avis to produce documents responsive to the Subpoena from 2018 to present.

---

[10] With respect to Avis's objection as to the time period, Turo agrees to only seek documents from 2018 to present.  (*See* O'Hollaren Decl. Ex. 12 ¶ 13.)

Dated:  October 27, 2021                    COOLEY LLP


                                           By:  _/s/ Nicholas Flath_____

                                           Nicholas Flath
                                           NICHOLAS FLATH (5262498)
                                           55 Hudson Yards
                                           New York, NY 10001
                                           Telephone:    (212) 479-6260
                                           Facsimile:    (212) 479-6275
                                           nflath@cooley.com

                                           MATTHEW D. BROWN (Cal. Bar No.
                                           196972) (*pro hac vice* forthcoming)
                                           BENJAMIN KLEINE (4374831)
                                           ALEXANDRA R. MAYHUGH (Cal. Bar
                                           No. 300446) (*pro hac vice* forthcoming)
                                           RYAN T. O'HOLLAREN (Cal. Bar No.
                                           316478) (*pro hac vice* forthcoming)
                                           3 Embarcadero Center, 20th Floor
                                           San Francisco, CA  94111-4004
                                           Telephone:   (415) 693-2000
                                           Facsimile:    (415) 693-2222
                                           brownmd@cooley.com
                                           bkleine@cooley.com
                                           amayhugh@cooley.com
                                           rohollaren@cooley.com

                                           Attorneys for Movant TURO INC.